Case number 14-1074-8L, Public Service Company of New Mexico, Petitioner v. National Labor Relations Board. Ms. Google for the petitioner and Mr. Jost for the respondent. Ms. Google for the petitioner and Mr. Jost for the respondent. Ms. Google for the petitioner and Mr. Jost for the respondent. Ms. Google for the petitioner and Mr. Jost for the respondent. May it please the court. Good morning. I'm Robin Google. I am here on behalf of Petitioner Cross Respondent of Public Service Company of New Mexico. Thank you for the opportunity to be here today. The company is appealing from several decisions by the National Labor Relations Board. Three issues are brought before the court where we think the board committed a clear error. The first issue involves requests for information with respect to non-unit employee data, and it's the company's position that it was a longstanding relevancy burden that the union did not meet and that the board's decision departed from this precedent without any reasoned explanation for having done so in this case. The second issue is respect to interpretation of a very important provision in the party's collective bargaining agreement that provides for an informal discussion process in attempts to resolve grievances at an early step, and it's our position that the board applied the wrong law in reaching its decision, did not look at the plain language of the contract, found that the company violated the act by departing from its own reasonable interpretation of that provision, which the board recognized was a plausible construction, and instead used past practice during the course of the contract to determine that the companies had violated the act in departing from that practice. There's a secondary issue there that I'm willing to, because of the brevity of time that I have today, with respect to the second supervisor change, rest on the briefing unless the court has specific questions. But with respect to the second issue, I do intend to focus primarily on the interpretation of the informal step discussion. Lastly, there's a third issue that may seem somewhat limited to its facts, but is important to the company because it does impact its management rights, its inherent management rights as recognized by labor law, to manage those processes that fall outside of a CBA that are not impacted by a CBA, and to conduct its business as it believes is best, and that deals with processes for managing its HR department and relates to a steward's interest in expressing a complaint of alleged discrimination to the HR department. And despite the fact that he utilized this other process that's available to all employees, the board, without any evidence to support it, recast that purported complaint to the HR department as a grievance under the CBA and found that the company had committed an unfair labor practice by not processing it as one. Turning to the first issue, there are a number of requests for information that relate to grievances that the union served upon the company that were very broad and sought unit employee information and non-unit employee information. The unit employee information was provided, so that's not at issue here. What is at issue was the company said that the respondent to the request by contending that these are not similarly situated employees. And while the relevancy burden admittedly is a low one, there has always been this dichotomy that has been recognized for decades between a request for information for unit employee information, which is, of course, presumptively relevant, and then what the burden is on the union if it seeks non-unit employee information, which is not presumptively relevant. What weight should the court give to the board's decision in 2011 regarding your clients on information requests? Is the court referring to, is this the LIVTAC decision that was taken to the tent? Senate 28 CA 23148 decided May 24, 2011, involving your client. I believe that's the case that was reviewed at the Tenth Circuit. I'm talking about the board's decision. Okay, there's a couple of decisions, and I'm a little confused. Does Your Honor have to tell, is that the LIVTAC or the Schmidt decision? Is that the LIVTAC decision or the Schmidt? This is Chairman Liebman, Pierce, and Hayes. Decided May 24, 2011. And in that opinion, regarding requests for information, the board sets out the standard. And I just want to know what weight, if any, we give to that decision by the board telling your client what the standard was. Yes, Your Honor. Now I know which one. There were two at issue that have been referenced by the board. Now I know which one Your Honor is referring to. 2011. Yes. There is no deference to be given there, because that was a factually different situation with respect to those requests for information. What about the legal standard the board identified? Well, the legal standard that is relied upon is not a different legal standard that has been recognized with respect to demonstrating on the disparate treatment theory that a unit and a non-unit employee are similarly situated. I think in that case they were guided by the fact that there was actually some evidence that the non-unit employees whose information had requested had engaged in similar misconduct under a policy that applied to both unit and non-unit employees. But the board does not explain or need to really explain if it were departing from precedent or anything in that, because it really wasn't departing from precedent to that extent, that when a union seeks non-unit employee information under a disparate treatment theory, the burden of proof established through a long line of U.S. Postal Service cases that are board decisions, it has to show those two things. That's why I asked you about a case involving your own client, where the board told your client what the standard was. What weight are we to give to that? That's all I'm asking. I don't think that it deserves any particular deference. Even if the board says, here's our standard, all right? Probability the information is necessary and relevant, citing ACME, citing Disneyland Park, Sands Hotel and Casino, very liberal discovery type standard, back to ACME and Disneyland Park. That's all I'm trying to understand. I get your argument in the brief that there are these other cases involving the U.S. Postal Service, etc. But there's also this case involving your client on the very issue. Well, I think, Your Honor, that those standards that you have just read to me are a more generalized view of the analysis starting at the top that distills down to the very specific, particularized type of showing. In other words, when I read your brief, you're saying that the board has a number of cases involving the Postal Service where the union's request for information is not relevant unless the union already has evidence that can prove its case. No, I don't go quite that far, Your Honor. Not quite. Almost. Not quite that far. No. All right. My point is that in stating the standard in this case to your client, the union did not say that. I mean, the board did not say that. I'm just trying to understand where we are here on the law. It's your client. It's the request by the union for information. The board says, Here's the standard. And it doesn't adopt all these Postal Service. It adopts ACME, Disneyland, etc. That's all I'm trying to understand. Where are we on the law here as far as your client is concerned? On the 2011 case, it looks like the union's request for non-union information was very similar to the facts of this case. And the board said they were right. They wanted to raise a disparate treatment claim, and it should have been obvious to you, and they were entitled to the information. Well, I... The 2011 case, essentially the same case, very similar. You've already been told, so what's new here? What's new here, Your Honor, is that in that prior proceeding, the business agent had some objective factual basis for believing that supervisors De Lorenzo and Busca had engaged in the same kind of misconduct that the unit employee, Mr. Madrid, had engaged in. There was some. He actually had personal knowledge that De Lorenzo and Busca had been investigated for having tampered with equipment that did not belong to the company in relation to a gas leak at Montgomery & Carlisle. Mr. Madrid had been terminated, he was the unit employee, had been terminated for having tampered with equipment that did not belong to the company when he shut off service to a customer and ended up tampering with equipment that wasn't P&M's. So there, Mr. Tafoya, the business agent there, had some objective factual basis to support his request. Your Honor, let me see if I'm stating a test that requires the union to show, or the union to have, the disparate treatment case and just request additional information to support it, as opposed to a test which is, these are similar situations, non-unit and unit people being paid for similar kinds of work, and we want to look and see and confirm if there's no disparate treatment. You can't do that. That, it's based on just mere suspicion or a theoretical interest in auditing or checking. No, it's precisely the same kind of work or same kind of situation. They can't seek that information. Well, that's, that is called a... One thing, if you say, we have employees, they're not managers and they don't have that kind of training, but we really think that their horsepower is as good as your manager's. We want to see what your manager's are making so we can think about that. That's a different case than what you're talking about. These people are doing essentially the same thing, and we want to see whether there is disparate treatment. And I understand the question, and I think that I have to turn to the Board President that has made a distinction that the relevancy burden depends upon exactly what you're asking for and what your reason for asking for it is. And in the disparate treatment case, the burden is on the union to show they're similarly situated. There's two parts to that. It's more than simply showing that a common rule applies to both. You must have some objective factual basis to suspect reasonably that they have actually engaged in the same misconduct. Now, that doesn't mean you have to have all the facts. That doesn't mean you have to know everything to prove your case, but just some basis to believe, or at least at a minimum, as pointed out in the San Diego newspaper case, as pointed out in one of the Board's cases, which I think was the Beth Abraham case. Undertake an investigation, at least make some effort. Don't just have a theory and serve a request, because under those circumstances, that is classified as a classic phishing expedition. And it is a place in the law where we draw the line, and as Judge Rogers pointed out in reading that standard, it talked about a probability. So it's a low burden. Indeed, it is. But you must have some sort of factual basis to suggest there's a probability. It may not be a possibility. There's a possibility beyond a theoretical possibility, but at least a probability. So if you provide that info, it will be. In the case of the employee who was asked to submit a doctor's note, the question was, was this a new requirement? And she had been going to the doctor, apparently, and never been asked to supply a note. And so a grievance was filed, and the union was asking for information whether this same note requirement was being applied to non-unit employees. Now, in your view, that information would not be relevant, and it either would or wouldn't support a disparate impact claim. But first, the union must do a survey of the 1,200 non-unit employees to find out whether they've ever been asked to submit a doctor's note. No, I think that the union can take some minimal responsibility for an initiative to at least inquire. I mean, there are many avenues available to it. So the employee says it's none of your business. I mean, why should I say, you know, I don't like the union, I haven't joined the union, I don't want to give up this information. The information is the information in the employer's control. Well, the problem is that the medical thing really is custodianship in the sense that the board case law suggests, look, it's obvious to you why they need this. You lose. And it should be obvious here if the unit employee said, we've never been required to do this before. Well, the union people have never been. You know that the non-union people have never been. So they're now saying this is a new requirement. Have you imposed that new requirement on the non-unit people? That seems terribly relevant. Because if in the past there had been no requirement union or not, if there had been no requirement union, they're definitely not for the non-union. So they're saying there's a change. Did you do the same thing for non-union? I mean, it seems evident that's terribly relevant. Well, I think there's a distinction between if the evidence exists, whether it's relevant, and what the burden is, however, to show that your request is supported and it's not just a fishing expedition. And that's that distinction. I mean, labor law certainly tries to strike a delicate balance between interests of employees and unions and employers. And it has done that with respect to requests for information by recognizing this dichotomy. And while there's really no burden with respect to unit employee information, there is a slight burden, and it's not much. But arguably it could be relevant if it existed. You say that in response to the union's request. And oil chemical means that we can't take that into account. And here management would either say yes or no. Well, there was no information or there was no evidence presented at the hearing that management ever relied on it, as opposed to some of the cases that are cited in the briefing where management made the information relevant because it said, well, in making that determination with respect to, I'm sorry, I'm out of time. May I continue? In making that determination with respect to what discipline was going to be issued to the unit employee, the evidence in a couple of the cases that are cited in the briefing was that management took into account what discipline had been issued to others. See, I understand cases where the facts were such that there was a brawl with supervisors, so they knew that supervisors were involved. All right? This is something where they don't know. I understand. And it's not a situation where the employer has to do a six-month study and hire experts. It's just, do you require this or not? Well, I think the request went much further than that. I think they wanted it to compile all this information that said how many times has a non-unit employee asked for time off to go to a doctor's appointment, how many times in response to that has a supervisor asked for a note. But as I understand it, I get your point, that in other cases I've seen, these requests have been made and management and labor have sort of worked out what really needs to be revealed. As opposed to a six-month study, you know, it's just a yes or no. And presumably management knows whether or not they have a policy to require notes for medical leave that's under three hours. Well, the request was actually... You don't see any difference here. The request was actually, the request for the medical note with respect to Ms. Plant was actually consistent with the policy as written. So it wasn't, she was saying, I've never personally been asked for one before. But it was consistent with the policy. Policy as written said you have to give a note every time you go to a doctor. No, the policy as written provided that, you know, if an employee had a low PTO balance, was missing a lot of time from work because of doctor's appointments, at the supervisor's discretion at some point they might, it was up to them to decide, you know, maybe I should ask for a doctor's note for this absence because this employee has got a low balance and they've had a lot of absences. And so it was applied consistently as written. So there wasn't anything suspicious in that regard because on its face it was applied consistent with the policy. She simply said my experience has been I haven't been asked before. I'm out of time. All right. We'll give you a couple minutes in reply. Thank you. Mr. Jost. All right. Good morning, Your Honors.  My name is Micah Jost for the NLRB. I'd like to begin by addressing Judge Rogers' first question regarding the 2011 decision and order which was enforced by the Tenth Circuit. The facts of that case I believe are precisely on point with regard to one of the union's information requests in particular. That's the request for the discipline, if any, that was administered to a supervisor, Rex Foss, based on his involvement in the same gas leak that the other two individuals, DiLorenzo and Busca, had been involved in. The record sites I would direct the Court to for that are Joint Appendix 455 and 56, which is where the union requested that information and explicitly referenced the other supervisors and made clear it was dealing with the same issue and the same grievance pertaining to the same individual, Mr. Madrid. Right, but I think counsel might respond that there they knew the supervisor was involved in this brawl, so they had some objective evidence. What do you say in response to her last point that the policy here was consistently applied? I think the union was entitled to evaluate, in particular because it knew that Ms. Plant had not been asked to provide doctor's notes in the past. It had at least some reason, certainly, to think that this was a new or not consistently applied rule. And the request that it made was a request that was narrowly tailored to only get an information that would show how the policy had been applied. And that's the key difference between the case we have here and the case that the company relies on principally, which is the Postal Service case from 1993, I believe. In that case, what the union was requesting was records in an open-ended fashion. They were asking for all of the leave records, all of the disciplinary records of certain individuals, and they simply had no reason to know whether those records, that broad range of information, whether there would be anything relevant there. What the union requested here, in each instance, was only information that would show how policies that had been applied to unit employees, how those policies had been applied to other employees as well. Those pertain to specific pending grievances that the union had. I believe there's an error in the company's reply brief where it suggests that there was no grievance in Ms. Plant's case. There was. It's referenced at transcript pages 88 and joint appendix 448. It's referenced in the information request itself. So what this comes down to is one line of cases, which includes Holiday Inn, cited in our brief, and the 2011 board decision enforced by the Tenth Circuit. In those cases, where you have a request for information about how a policy has been applied to various people and the only information the company would have to provide is examples of where that policy has been applied that would show whether it's been done in an even-handed manner or not, that's one world of request. As the company noted, excuse me, as opposing counsel said a moment ago, quote, the relevancy burden depends on exactly what you're asking for. And the board agrees. Where you have the other line of cases is in the postal service context, where the union is asking to be able to delve into a broad range of records that may or may not show any applications of the same policy. I'd also like to note with regard to the medical leave and the paid time off, the plant information request, as I think was brought out in the questioning earlier, it would be unfeasible and very problematic for the union to try to prove its case or to obtain whatever heightened level of evidence the company believes it would have to have by trying to interview any or all of the 1,200 non-unit individuals. It's not clear how many of those individuals the company thinks the union would have to talk to. Some of them could be supervisors, which means they wouldn't share the same Section 7 rights to cooperate with the union, and it would place them in a difficult position of essentially a conflict of interest. Do I provide information that would assist the union in processing its grievance  So basically, are you taking the position that whether the union has met its burden to show relevance because it's a contextual determination necessarily invokes the board's expertise and there is very little room left for the court? I think that's certainly the case, Your Honor. Well, I'm trying to understand because you have this line of cases that say you need some objective evidence, and I thought that's what counsel's talking about. It's not enough that this one lady, this one employee was asked for a note when the manual itself said, you know, if you're never at work because you're always on medical leave, we're going to require you to give us a note because we're somewhat suspicious, basically. Right. And if I understand Your Honor's question, my first response is that I think it's clear from the cases we cite in our standard of review that the board, in the first instance, is responsible for marking out what constitutes good faith bargaining and the duty to bargain, and that includes determining what information is relevant. The other response I have is that, as I noted, the board has different lines of authority here. It has not departed from precedent without an explanation, as the company suggests. Rather, we point to cases like Holiday Inn and the 2011 board decision in this case, excuse me, with this same employer, and those are cases that establish the rule that's set forth in our brief, that when you have the same policy. I understand in your brief you've addressed this, but how about the board? Did it address? I think that the rule can be fairly drawn, the inference as to the rule that the board is applying can be fairly drawn from the facts in each case. It is a fact-dependent analysis. Relevancy always depends on facts of the case, and it depends on the nature of the request that the union is making. So when you look at certain cases that display certain facts and others that are different, I think the board is entitled to look at which cases are most on point and to draw those distinctions in accordance with its own precedent. I understand your last point, but I guess counsel's argument, one of the arguments is they didn't distinguish. They just ignored. Well, I don't think they ignored. As I understand it, Your Honor, counsel's argument is that the board in this case departed from precedent without recognizing the other cases, specifically the postal service cases. What happened, though, is that the board followed a different line of precedent or its decision was well encompassed by a prior line of precedent that's distinct from the one that the company relies on. The board did cite several of the postal service cases, so it was fully aware of them. It simply decided the case in accordance with whether or not the Holiday Inn case, for example, was cited. It's well-established authority from the 1990s, within the same era that these postal service cases come from. And I think it's consistent in particular with the postal service case from 2000, which I think is a 332 NLRB 635, in which the board did find that a request for information was relevant, not based on the union having some sort of reason for believing that there had been disparate treatment, but rather simply because the union had seen an individual, a supervisor, arriving late and therefore had reason to think that the same policy had been applied.  Therefore, it was entitled to an open-ended inquiry into that individual's records. Here, again, the union knew everyone was subject to the same policy and its request was targeted to only reveal applications of that policy. I'd like to move for just a moment to address an issue that's raised in the company's reply brief, which is mootness. That pertains to the union access issues that the company has reached a prospective arrangement with the union on. I think the mootness argument there is clearly addressed and resolved by the Supreme Court's decision in Mexia Textile Mills, which is 339 U.S. 563 from 1950. That case makes it clear that even if the parties have reached some sort of agreement or even if the company asserts that it has remedied the unfair labor practice or changed its ways in some way, the board's ordering poses a continuing obligation and is entitled to have the weight of judicial enforcement behind that order. In this case, there's, of course, a notice posting, which would inform employees that the changes have been rescinded and the employees are entitled to have their Section 7 rights indicated in that way. I'd also like to briefly turn to the unilateral changes that were made to the informal step, and there I would simply note that a great deal of time is spent in the company's reply brief on the concept of contract coverage. That argument is clearly barred by Section 10e of the Act because it was never made to the board. Indeed, it's difficult to even discern from the passing references in their opening brief, and that's why neither the board's decision addresses it nor does our responsive brief. What is clear with regard to the unilateral changes is that the parties had a longstanding practice dating back to approximately 1977 of handling the informal step in a particular way. The company's own witnesses admitted that it was dissatisfied with the way that that practice was proceeding and that it wanted to institute this new training in order to make the process function better. Those admissions are at transcript pages 974, 1035, and 1109. The company seems to suggest that simply because it had what it thinks is a colorful interpretation of longstanding contract language that it was entitled to cast aside the party's past practice and simply implement a new interpretation at will as if the parties were riding on a clean slate. That is, of course, not the law. Past practice is a legal doctrine that has independent dignity and significance as a matter of law. An employer is not entitled to depart from past practice simply on the basis of a newly arrived at interpretation of old language. The cases we cite in our brief that are particularly pertinent, I think, are Northeast Oklahoma City Manufacturing from the Tenth Circuit and Granite City Steel, which is a board case. In the Tenth Circuit Northeast Oklahoma City Manufacturing case, there was a contract provision that required monthly bonus payments. There was also a past practice that had arisen making those payments in the second week of the month. So even though there was a contractual provision that could have been interpreted in any number of ways, there was a clear past practice and the company violated Section 885 when it departed from that. Was there a grievance procedure into which that claim could have been processed? In the Oklahoma City case or not? No, in this case. In this case, the parties, of course, do have Article 10 of the Collective Bargaining Agreement, which sets forth a grievance procedure. To my knowledge, neither party has ever attempted to put the unilateral changes through that process. Did the company argue below that this was a grievance matter that should have been pursued there? To my knowledge, deferral has never been argued in this case with regard to those issues. What has never been argued? Deferral, Your Honor. All right. The proposition that the company and the union should have resolved the unilateral changes through the grievance procedure instead of through board charges. I'd like to finally briefly address the materiality issue. The company hasn't addressed that oral argument yet. But in that, with regard to their attempt to separate out the second supervisor requirement from the other requirements, this Court's decision in micro-image, I think, is particularly instructive. In that case, the Court addressed a brief two-day change to lunch times, and it recognized that that change might be inconsequential in isolation, but it had to be addressed in the context of the other unfair labor practices that the company was engaging in. In this case, similarly, where you have the same training, which is directed at making the same changes to the same grievance process, it's implemented by the same supervisors and affects the same employees, there is precisely the kind of nexus that would require or that would permit the board to reasonably view these changes in conjunction. And that's what it did in this case. Unless the Court has any other questions? I have one question, just so I'm clear. Your brief at page 38 says, and this is back to the first issue, about whether the union must already possess evidence of disparate treatment before it may request information relevant. You say, notably, the company never raised this objection at the time the union made its information request. And so you're citing, I think it's oil, no, you're citing Holiday Inn, that's a board case, and then later I think you cite oil chemical. So does that mean that even if the company raised it in objections to the ALJ's decision, the matter is not properly before this Court? I believe that the language that we cite from Holiday Inn noted that the objection was raised somewhat belatedly, and I think that that went to perhaps the board's analysis of whether it was a real matter of substance. Certainly with regard to burdensomeness, the case that we cite from this Court, the Okaw case, with regard to burdensomeness and confidentiality, any of those considerations had to be raised to the union. Here, the objection that the company raised in each instance was simply arguing that the information requested was not relevant. I don't think they articulated precisely to the union that the union, in the company's view, lacked sufficient evidence of disparate treatment. I think their position was these individuals are not similarly situated because they're supervisors or because they're non-unit employees. So I think the shifting arguments would certainly go to the weight or the substance of the company's defense in that regard. I don't think that the board, to be entirely candid, I don't think that the board in Holiday Inn refused to consider the argument simply because it hadn't been made in those precise terms to the union at that time. So it's properly before the court? I believe it was preserved in the arguments to the board, and I don't think that the board agreed. I just wanted to be clear that I understood that statement. Thank you. All right. Thank you. If the court has no further questions, then we would simply ask that the court enforce the board's order in full. Thank you. Does Ms. Goble have any time? Why don't you take two minutes? Two minutes. Thank you, Your Honor. With respect to what the union can do to investigate, it can ask its own membership, even if it doesn't want to talk to the other employees. And the other thing to recall is in all of these U.S. Postal Service cases, employees are not segregated from each other. So unit employees and non-unit employees work around each other. They see each other, and they observe each other. And it was in those cases, that was the only burden that was placed on the union in those cases was, have you seen or heard anything? And there's plenty of opportunity via email to all its membership. There are bulletin boards throughout the company where they post information. They are permitted to put flyers in mailboxes. So they could have made an inquiry, has anyone observed or seen something like this, in order to try and find out if they had similarly situated unit and non-unit employees based upon conduct. With respect to the CDA issue. But that's my whole point. You're positing one big happy family where we all cooperate and get along with each other. Who knows if that's true between union and non-union employees? What I'm positing to the Court is they ask their own membership, their own membership. It's hundreds of members. So I understand your point. And I understand your point that non-unit personnel may not want to take their time to respond. But they have hundreds of their own members who they could easily reach out to and ask, what have you experienced? What have you observed? Okay. With respect to the CDA issue, this Court's review is they know. And on that point, the company did, in its exceptions, in its brief in support, and in the reply brief, point out that the Board did not look to plain language first for interpreting the contract. And if you take the definition of grievance, which is a dispute between the parties with respect to the interpretation or application of provisions of this agreement. Article 8. I'm sorry? Article 8. And you put that, yes. And you put that then into the language that describes what the informal process is supposed to involve. And then the plain language tells you that the informal process, which requires that the grievant take their grievance up with the supervisor. I thought the evidence was Cox had talked to his supervisor. I'm sorry, Your Honor. I'm talking about the second issue with respect to just what the informal process should involve. Because the company is- Oh, and the argument here, you seem to think that past practice is not an independent legal doctrine but is just parole evidence? I think in this particular circumstance, the Board did the analysis backward. According to the law- But you've just told us it's de novo, so we're making this. Correct. And the first place you look is plain language. And had they looked at plain language- And what about past practice? Past practice would become relevant if there was ambiguity. But in the circumstances here, if you look at the plain language- And so your client says, I have a plausible interpretation. I have a plausible interpretation under the plain language of this contract. Plausibility is normally a Chevron Step 2 argument, not a Step 1 argument. Well, we certainly construed it as a recognition by the Board that both sides had a reasonable interpretation of the plain language. I mean, they've been doing this for decades. Everybody knows what this first step is. Well, I think what's important is what was noted by both parties- Oh, I'm sorry, Your Honor, I'm out of time. Go ahead. What was noted by both parties at the administrative hearing was what is the purpose? And I think you first looked at the plain language. But if you want to know what does it mean, the other thing you're trying to discern is what was the party's purpose? What was their intended purpose of putting this language in their contract in the first place? And what was remarkable was at the hearing, both parties agreed and described it as a process that's intended for them to have a discussion about the problem in efforts to try to resolve it at the discussion level. And yet, the company was found to have violated the act because it anticipated and expected that in accordance with that process, the union personnel would identify the articles of the agreement that had been violated and explain the violation. But they wanted to add things. And we're not disputing those other things other than, like I said, the secondary issue with respect to the second supervisor. I know, and the Board made some findings. And those have not been appealed with respect to the time frame or when the supervisor had to sign and receive. Is that what your Honor is asking about? No, I'm asking about you say there isn't substantial evidence to support the Board's findings that these were material and significant changes. Well, there's no substantial evidence. If the plain language required that the informal process would include an identification of the CBA articles that had been violated and how they had been violated, then the company hadn't unilaterally changed anything. It was just trying to adhere to the process that both parties had envisioned. There's a lot of Board history that's saying past practice can support a claim that the company is taking unilateral action. And, I mean, that's why I asked whether you raised the claim below, saying this is a grievance matter. The Board shouldn't touch this. We told them that you should file a grievance and go to arbitration. If you disagree, that's not the way you've pitched it. So it seems to me, I mean, at least it would be more interesting to me if it had been pitched that way. You didn't, and so the past practice cases are there. It clearly affects conditions of employment. You've changed something, and the Board says that's not the way it's ever been. You have to talk to them first. Well, and I'll confirm that the company below did not raise the deferral issue. That is correct. But I think there's a difference between a past practice that's extra contractual and some of the cases that are relied upon are those classic line of cases the Board cites in its briefing where you have something on which the CBA is silent, and obviously a past practice that can become a term and condition of employment even though it's not covered by the CBA. And it may require, then, of course, bargaining before it can be changed. I find those cases to be distinguishable from this situation because the case law is clear that the approach really should be first look to the plain language, and if the employer's interpretation is reasonable under that plain language, and that's the company's position, the definition of grievance when you insert it into the informal discussion process tells you what you should be talking about, which is any dispute between the parties regarding interpretation. If it was that clear, there wouldn't have been the practice. Excuse me? If it was that clear, there wouldn't have been the practice. Well, I think the record reflects. It doesn't make sense. The practice proves the point that you could read that language to allow different possibilities, and the parties had used another possibility for a long period of time, and now the company wants to change it. Well, conceptually, Your Honor, with respect to what is the evidence that goes most directly to the point trying to be determined, which was what was the party's intent, and that's where the evidence was uniform. When both sides were asked, what was your intent when you entered into this contract, this contract with this provision, what did you intend this informal process to encompass? And both parties said it was an opportunity to sit down and discuss the problem, and the steward said, and I informed myself on that as to what provisions of the article have been violated and what the problem is so we can have that discussion and see if we can work it out at that level. And yet, they took a self-contradictory position, but that doesn't really require us to explain the problem. They had devolved into a practice that the company thought, both sides aren't really doing a good job of this. I mean, the point of the whole process is, can we achieve peace here on this issue with the most effective resolution for both sides, say? Can we sit down and discuss it before it has to escalate to a more protracted affair, which would be a panel, and maybe even going to arbitration? Let's have a chance to talk about it first. Written charges. I'm sorry. Written charges, second supervisor. I mean, that's a more formal process. I mean, those are the board's findings. That's all I'm getting at here. Are there any further questions I can address for the board? I don't think so. Thank you. Thank you.
judges: Henderson, Rogers, Edwards